Good morning, Your Honors. May it please the Court, my name is William Salientang, West Litigation Group. I represent the appellate United National Insurance Company as subrogate of the Council of United Owners of Pelican Beach Condominium. Your Honors, the main issue in this appeal is whether the subrogation waiver contained within the AIA contract at the appellate under these specific circumstances. I'm going to focus on that, under these specific circumstances. Appellant is not challenging. These are pretty rough circumstances. Absolutely, Your Honor. And we're not appealing necessarily the validity in general of the subrogation waiver. And we're not, as the lower court focused on, we're not discussing or really arguing regarding whether or not the subrogation waiver applies to work versus non-work property, which is a dichotomy that was discussed heavily by the lower court, but is not our argument. What our position is, is simple, Your Honor. And I'm going to focus more since for the sake of time on our contractual argument rather than our gross negligence or our statutory argument, which I will leave to the briefs, to the arguments left in the briefs. Our argument is premised on simply this, that the contract between the appellants in short, Pelican Beach Condominium Association, and Peninsula Roofing, the appellee, that contract defines specifically what is work and what they are getting paid to do. And work, we start with that premise. Work in this particular instance is the how, what, where. Not the finished product, as the appellee may argue. So work is not the roof. That is the product. Work is how the roof is performed and how the roof is built. And in this particular instance, the contract specifically defines how, the how part of the work. And one of the provisions within that contract, 1.3 use of premises, specifically says, do not use the area, being the garage, for parking or storage of materials except approved by the owner. And in this case, there On the day at issue, on the day of the fire, appellee was not allowed to use the garage facility within the condominium. And for the sake of context, the garage is the first two floors of the building, because it's obviously this is beachfront property. So to provide protection. Condos are above the garage? It is. They are. There's about four floors, four floors of the garage, which stands basically at beach level. And then there's also an underground parking garage. On this particular day, they were specifically prohibited from using the garage. In fact, anyone was prohibited from using that garage, because this building is normally vacant in the winter. Most of the condo owners, actually all the condo owners leave Ocean City, Maryland during the winter. And what they do is when the last condominium association member leaves, they put up physical barriers. They put up barrels that prohibit people and mostly teenagers from using the garage during the time when there's no individuals there. Appellee on this particular day decides they're going to use this garage. And so they drive in, they move the barriers, they drive in, and they run a generator behind their own payout bed. And a fire eventually starts at that location. And it's stipulated by the parties. Were they parking under the condo? They did. They used the parking garage that is specifically prohibited by a contract from them using. Now, the reason why this is important... But you're not a part of that contract. We are not a part of that contract. However, what the contract does have is a subrogation waiver. And the subrogation waiver, and I'm talking about the condo association and the contractor, the roofing contractor, waive all rights against each other to the extent covered by insurance applicable to the work. Well, applicable to the work, but why doesn't that phrase just mean property insurance applicable to that work? It generally does. But in the context, the real issue, Judge Floyd, is not the actual language of that subrogation waiver. As far as we are concerned here, the validity of the subrogation waiver per se is not the issue. It's what is the scope of that subrogation waiver. And there is case law from this court that specifically says American Home Insurance versus Monsanto, which specifically says that a subrogation waiver is not a general preclusion against subrogation for any acts that the potentially liable party does to the other party to the contract. What that American Home Insurance case basically states is that it depends on context. So not every action, not every lawsuit, not every subrogation lawsuit is per se invalid or precluded. But it's context. And in this particular context, it's those words, applicable to the work. And work is defined specifically, actually, in the contract as including all of the documents within the contract and the methods, the who, what, where of how you put this group together. And in this particular instance, they intentionally are outside of the scope of work. So it's our argument that this- They weren't working on the roof? They were working on the roof. They were? And it's good. Judge King, respectfully, it's a misleading word to use, work. They were performing acts in furtherance of the roof on the day of the fire. I thought that you were going to say that, but you're saying the problem was where they parked. The problem was where they parked. They weren't supposed to park in that spot. Right. And by parking- They were doing the work on the roof, and that's what they were supposed to be doing, was working on the roof. On the day of the fire, they were performing acts in furtherance of completion of the roof. But they were parked in the wrong place. Why does it matter? The parties agreed that the condo crowd would have, with my insurance, one of the purposes was to cover for a fire. So you had a fire. What difference does it make? The condo company can't sue Peninsula based on the fact that they had insurance. So you step in their shoes, why can you sue? Well, Judge, the issue being that with all contracts, the content and the agreement between the parties, that's what should be effectuated by the contract. In this particular contract, the agreement is specifically, we will waive, for all intents and purposes, subrogation rights, as long as you abide by the terms of the contract. And in this particular case, which is the definition of work, because it says here the definition of work is the contract. The definition, since you in particular, appellee, did not do the work as prescribed, you're no longer, even if you're in furtherance of the roof, the furtherance of the product, you're not in the work, which is the only thing, the applicables of the work, insurance applicable to the work, that's the only thing protected by the subrogation waiver. Because in the scenario, Judge, where I think you were leading, and you're not in the work, any lawsuit between appellee and appellant in this case, the insurance company, would be precluded simply on the basis of it's a subrogation case. No subrogation because you have insurance. And that's not what was agreed upon here. It could have said that. It could have said, we waive rights against each other for fire, period. But it doesn't. This particular subrogation waiver says, we waive claims against each other to the extent insured by insurance applicable to the work. Right? And it's that modification. That's the limitation on it. Applicable to the work. Absolutely. The applicable to the work is a limitation provision for all intents and purposes. But the work is on the roof. The product is the roof, Your Honor. And that's, I think, honestly, with respect to, with all due respect to the lower court, I think there's that issue as well. And obviously, appellee is going to argue that. But not all acts. Y'all did full discovery in this case, right? We did some discovery, Your Honor. We did discovery and everybody was satisfied and made motions for summary judgment. Yes, Your Honor. We were prepared at this point. We filed, the most summary judgment were put together and filed early on because of the subrogation waiver issue. And this went off on summary judgment? Yes. That's what we're here on. Right. So this court has an overview over these issues. So did your client have an argument that you were not required to pay that claim because it was beyond the scope of your coverage or you clearly agrees in your coverage? No, there's clearly coverage, Your Honor. And my client did pay to its insured. But wasn't that the wording? Wasn't that the wording, though, to the extent it's covered by insurance that you waive subrogation? To the concern, to the extent it's covered by insurance applicable to the work. It could have said that. Applicable to the work. Yes. And by paying it off, you must have thought it was applicable to the work. You said it's applicable to the property. Applicable to the property, Your Honor. So you're using property to determine the scope of your obligation and you're saying that subrogation is limited by work. But wasn't the truck loaded with equipment or materials related to work? It did, Your Honor. And there's no question. That the acts that were being performed on the day of the fire were acts in furtherance of finishing the roof. But there's a specific definition in the contract for work. That's why if the contract, for instance, had said we waive rights against each other to the extent... You're talking about the waiver contract. The waiver, I'm sorry. Not the insurance policy. Not the insurance policy at all. This is, we're now arguing... Unfortunately, I'm obviously arguing a contract that my client was not a party to. You're arguing a contract your client was not a party to and you've carried out your obligations under the insurance policy. Absolutely. You've paid the condo for the damage. On the first party claim with our insurer, we paid it out. And then in this particular instance, appellee's saying, well, but you can't sue us for that money. The waiver of subrogation doesn't reach what you're trying to do now. No, it does not. I mean, that's the proposition you're having to solve. The proposition absolutely is the waiver could have said, and I would not have an argument if the waiver had said, it waives the subrogation rights of my client. If what they did was grossly negligent. Yes. Is that still covered by the waiver? My argument is... Under Maryland law. There is no Maryland law on this particular subject. It is our argument... On which subject? On the gross negligence issue. So Maryland's high court has not ruled on whether a waiver of subrogation is enforceable in the event of gross negligence? The Maryland high court has not ruled on it. And in fact, there is no... Did you ask the district court to certify the question? We did not ask the district court to certify the question. You could have. I mean, they do them up there in Maryland. Yes, Your Honor. We could have done that. But I believe the district court did not... Well, the district court... It's my opinion that the district court reached its conclusion on different grounds. And at that point, we didn't ask for the gross negligence question. But you base your argument on sort of the thin reed that is because they breached the agreement not to park under the condo. Correct? That's the sole factual basis for your... That they breached the contract because they parked under the condo, although they were at work in the process of doing work, but they violated that restriction. Correct? Yes and no, Your Honor. The... It can't... What they were doing was outside of the definition of work. And because it was... All because they weren't supposed to park there. Right. Absolutely. I thought you were saying not that they breached the contract, but they were grossly negligent about parking under the condo. It's both, Your Honor. We do make the argument about gross negligence. I don't make any argument. I'm allowing this to get you to answer my question. I'm just asking a question. Don't think I'm making any argument. Judge King, respectfully, I apologize if that's what it appeared to be. I did not. Our briefs do make the argument that gross negligence should invalidate this subrogation waiver. But the argument I'm making today, which I think was the contractual portion of our argument, is that this particular act that they did on that particular day was not contemplated within the four corners of the contract. That's the contractual argument. Right. And therefore... Part of it. Right. The waiver in the contract. You've got at least two prongs to your position here. Yes, Your Honor. And with that, my time is up. That's a thin reed, though, isn't it? You're saying that subrogation, because, of course, it's not your client, you've got to stay in their shoes, though, which means you have to take the actions they took. Right? They decided to waive subrogation, and you're saying that it's beyond subrogation solely because they did something wrong and violated a parking restriction. But isn't that fraught with... That's like saying, you know, you're not supposed to use that torch gun unless you're 20 feet away from the tank. And they're working on it, and they're less than 20 feet, then that wouldn't be a part of subrogation because they're supposed to be. Is that what you're saying? Is that level of granular determination? If I can answer... Yeah, sure. Your Honor, it's sort of like that, Your Honor. There is conditions, the who, what, where, as to how you perform this roofing project. Right. And that's the who, what, where is specifically what the subrogation waiver at work is what the subrogation waiver weighs. Yeah. Once you step away from the who, what, where, you decide to do it your own way rather than the way that was contracted for, then the subrogation waiver should not apply because subrogation waiver in and of itself is limited to the context in which it appears. And in this case, it only limits work, the who, what, where, and why. Under that interpretation, it would be untenable, almost unwilling, if you will, to monitor subrogation scope because then you would go into every little detail of the work to determine whether or not this was beyond what they were supposed to do. They didn't do it that way. This is not a spec sheet like you do for the sort of specs on the roof. That's a contract that said basically in performance it is. And it seems like parking under the, at least just a question, parking under the garage is not so far from the scope of work, even though Alexa Grant is outside of work. It's not like they were parking overnight over a weekend or something like that and something happened and a fire occurred and you said, well, that's so far from it. But here it's all within the risk just of building or constructing the roof, even though they weren't supposed to park there. That's my question. Don't you think this is within, I guess, the penumbra of that subrogation? Well, Your Honor, then the parties could have done that. The parties could have said we waive rights against each other to the extent that the act that causes the liability producing act to the extent that that act is in furtherance of the roof, but it doesn't. Instead, it limits it. That specific language limits it to the actual terms of the contract, which is a who, what, where, when. You said who, what, where, but it said work. Work. But work in itself, in the contract itself, is defined as the contracts, the actual contractual documents, plus all of the conditions and specifications. Well, they've got to get to work and they've got to park somewhere. They obviously were. This was actually towards the end of their roofing. So for all intents and purposes, you know, with respect to how they were using this generator prior to this particular day, they were actually hauling it up on the side and putting it on the roof and grounding rather than operating it in the rear pickup truck. Thank you, Your Honor. Thank you. Mr. Edwards? Chief Judge Burberry, Your Honors, may it please the Court. I think the mere fact that we're standing here today, three years after this fire occurs, really underscores the need to enforce waivers of segregation in construction contracts. So it's important to understand the purpose behind it. Maryland does enforce them. Maryland does enforce them, although- The District Court enforced it right here. The District Court enforced it. So they do enforce them. Matter of fact, the public policy up there encourages them, right? The public policy does encourage them. They're supposed to come back on litigation. That's exactly the point. And that disputes over insurance coverage. And three years later, we're sitting here arguing. The question is whether this waiver brought enough to get you out of it. But see, waivers of subrogation- He doesn't have a frivolous argument. Well, it's not frivolous. And you were grossly negligent. Well, I would disagree on the gross negligence part. It blew the place up. But the high court of Maryland has never ruled on whether gross negligence comes up as covered. That's true. Because the high court of Maryland- We didn't have to be plowing some new furrow on Maryland law. The high court of Maryland has addressed waivers of subrogation in one instance. And that's the John Mattingly case. And while it talked about the purpose behind and the public policy behind it, it decided to- It ruled on just a temporal issue on waivers of subrogation. It did not address the guts of this argument at all. Because it just merely ruled that the waiver of subrogation, unless it is called for in the contract, does not survive the completion of the project. So that's where it ended. So that doesn't really help us here, because we are dealing with something that occurred during the project itself. You say it was part of the project itself to park underneath there? Well, the project- I mean, and to get specifically the term work, you know, as defined is the construction and services required by the contract documents. And those services were the work that was being performed on the roof. At the time, the truck that was parked in the garage that had the generator, and it was parked there because that was- there was an open way to get the extension cords up, you know, was being used in furtherance of the work that was being performed on the roof at the time. So it was in furtherance of the work. And the restriction on the parking in the garage was, if you look in the context of how it is written, it's not a safety issue. It's a convenience issue on the- they don't want- they didn't want my client and my client's employees to be parking there, you know, and using the spaces that the owners of the building would be using. You're going outside the four corners of the contract, bud. You're throwing that in, aren't you? Well, that is what the- I'm interpreting what that clause is. I mean, it's not in a safety provision. It's not- Where in the JA is that clause? That clause in the joint appendix is at 379- 379 of 380. And what it says, I feel like I can read that. It says, driveways and entrances. Key driveways, parking garage, loading areas, and entrances, serving premises clear and available to the owner, the owner's employees, and emergency vehicles at all times. And then do not use the area for parking or storage of materials except as approved by the owners. Aren't we talking about a remoteness issue from the subject matter of the work? I'm not sure I understand that question. It's kind of remote from the subject matter of the contract. That is, construct the roof. Well, I would agree the parking issue is remote. The parking restriction is remote from that. I mean, it's not remote in the sense of they were parked there for the convenience of being able to have electricity up on the roof that they needed. But this really kind of comes- But the commission says keep the parking garage clear at all times. Available to owners, the owner's employees- Clear and available to owners, owner's employees, and emergency vehicles at all times. With the exception of, you're right. I'm not saying- I just found- Well, you just pointed it out to me there. Yeah, so- But the fact is, I mean, in almost every incident, you know, in a construction case, you know, where damage has occurred, you are going to have a breach of contract. It might be something as minimal as, you know, the breach of your duty to perform in a work being like conduct. You know, but there's always going to be a breach. And in fact, if you have a contract between two parties, you're usually limited to contractual damages. So to adopt a penalty argument would basically vitiate waivers of subrogation in construction contracts.  in the manner in which the work was performed. You know, it might be small, it might be big, but waivers of subrogation are not meant to look at the details of what caused the property damage. Waivers of subrogation are meant to look at whether the property damage was caused by one of the enumerated perils that the parties agreed that, in this case, the owner would procure insurance for. It's not based upon the niceties of whether it's negligence, breach of contract, gross negligence, breach of warranty. It applies to everything as long as the damage falls within the enumerated perils that the property insurance covers. You're saying that since they agreed that this was a covered event and they paid the claim. Correct. And that means they can't avail themselves of this kind of an argument under the waiver. Right. Is that your position? Yeah, because that phrase, you know, that they rely upon, other property insurance applicable to the work, is describing the insurance. It's not describing the work, you know, it's describing, you know, and really if you look at the phrase before, and this is on Joint Extract 236, you know, and it's under Section 11.3.7, you know, it talks first about damages, you know, and the waiver applies to damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3. And then it's or other property insurance applicable to the work. Well, property, you know, so that applicable to the work is, you know, really only references the other property insurance, but they obtain property insurance pursuant to 11.3, you know, because they use their existing policy, which under 11.3.5 they were entitled to do. So the policy that they used was property insurance obtained pursuant to Section 11.3. There's no restriction applicable to the work even if you want to insert or, you know, that that refers only to property insurance, you know, if the work was performed without breaching any duty. You have to go back, I think, again, to the reason behind waivers of subrogation, and that's to avoid litigation. It's to allow for the free flow of construction projects and that they not be interrupted when these losses occur, losses that the parties anticipate and figure out who's going to procure the insurance. That's the policy argument. That's where you started. That's the policy argument. It needs to come back to the policy. The public policy argument, not the insurance policy argument. That's the public policy. That's the public policy argument. And that's what you're resting your case on, public policy. Well, I'm resting my case on that. I'm resting my case on a vast, well, vast, I shouldn't say vast because, you know, it's seven different jurisdictions, you know, that we cited, you know, on pages 16 through 19 of our brief, that similarly hold that the waivers of subrogation apply, you know, not based upon the cause of action alleged, but merely that apply as long as the damages are part of the enumerated perils covered by property charges. You know, and that's, I can give you sites for everything, but it's Massachusetts, Illinois, Indiana, Missouri, Maine. The Ninth Circuit case is out of California and New York. They all reach that same conclusion. Maryland hasn't because, again, there's very scant case law on waivers of subrogation in Maryland. Or even the U.S. District Court in Maryland. You know, so, and perhaps to understand why that is. I mean, you know, you look to what the waivers of subrogation, the types of insurances waivers of subrogation are tied to, and that's property insurance, you know, or all risk insurance. They're not tied to liability insurance. You know, liability insurance matters, you know, if conduct causes the occurrence. You know, in liability insurance, you will typically exclude liability for breach of contract. But in all risk or property insurance, it doesn't focus on conduct. It doesn't matter how the enumerated peril occurs, in this case, fire. It could be by act of God. It could be by negligence, gross negligence, or by breach of contract. You know, it doesn't care, you know, for it to apply and to pay. So it doesn't really make logical sense, and I'd say legal sense, to tie waivers of subrogation, you know, to the niceties of the cause of action that is alleged when the underlying property insurance doesn't do so. Of all those cases that I cited, you know, probably the one I think that encapsulates almost all of the arguments being made is the Empress Casino Joliet Corporation, the Illinois Appellate Court, at 68 Northeast 3rd, 856, because it addresses both the policy reasons. It addresses the fact that this is not an exculpatory clause, you know, and because of that, it doesn't matter whether it's gross negligence, that it doesn't matter whether it's a breach of contract or any other cause of action. Again, going back to the policy, you know, this shouldn't be left to, one of the cases says, the artful pleading of insurance companies. Because if you say, well, if there's a breach of contract, you know, the waiver of subrogation doesn't apply, every single subrogation insurance company is going to break every single case as a breach of contract case. If you say gross negligence invalidates the waiver of subrogation provision, every single case from here on out is going to be a gross negligence case. I mean, the public policy reason behind it is to avoid litigation and to contract to pass the risk onto an insurance company, you know, for which they collected a premium to ensure such a risk. I can briefly talk about exculpatory clauses and indemnification clauses. The exculpatory clause does address, you know, the gross negligence issue. I don't believe that Maryland, you know, and the way Maryland looks at an exculpatory clause would determine that a waiver of subrogation is an exculpatory clause. In part, that's because in Maryland, an exculpatory clause, you know, basically is an agreement between the parties in advance that one party, you know, has no duty of care owed to another party, you know, and prevents that potentially injured party from recovering their damages. That's not the case here. You know, Peninsula Roofing was not relieved of liability. In fact, they still have liability or they would still have liability for any uninsured losses and excess losses if they occur. You know, Pelican Beach, they're insured, was not precluded from recovering their damages. Again, this goes back, they contractually agreed to look to the insurance policy. So, the issue of gross negligence generally is only applied to exculpatory clauses in contracts. And this waiver of subrogation provision doesn't fit the definition, you know, that Maryland court has had or used in the, let's say, the BJA Wholesale Club versus Rosen case on what an exculpatory contract is. It's also not an indemnification clause, you know, which addresses Appellant's argument regarding the application of Courts and Judicial Proceedings Art 5-401. You know, Peninsula Roofing was not indemnified by anybody. You know, they weren't, you know, and if your honors decide that the waiver of subrogation clause doesn't apply, which I hope you don't do, and the fact finder, you know, it can't turn around and go to Pelican Beach and say, you need to indemnify me. You know, so, and that's what 5-401 is really intended to prohibit, you know, is an agreement to indemnify, you know, a construction contractor from their sole negligence. And this is just a contractual agreement to procure insurance that will provide coverage for part of the enumerated perils including five. I think if your honors don't have any other question, I think I've probably hit every part of my argument. I've been told that I write much more eloquently than I speak, so I would submit my briefs for everything else. Thank you, counsel. Thank you. All right. Your honor, just briefly, as I started my argument, I said, we're not here to try to invalidate all subrogation waivers and cause a flood of subrogation lawsuits in the state of Maryland. That's not the issue. The issue simply is this. If you're following the contract and the provisions within the contract, you're protected. If you don't, if you choose not to follow the conditions of the contract, which you agreed to, then the subrogation waiver within that same contract doesn't serve to protect you. Counsel brought up the convenience issue versus safety issue, and I believe Judge King had some questions on that. What's a convenience issue and what's not versus a safety issue? Well, my grandfather once told me that there is no sin greater than any other sin. And in this particular contract, there is not one clause. It doesn't say this is a clause you can choose if you wish to not follow. The contract simply says do not. And in fact, this particular clause, this convenience issue that counsel, or this clause that counsel characterizes as a convenience issue, as Judge King pointed out, has absolute terms in it. Do not use at all times. Do not go in here. They chose to do it. They chose to go and step outside of what they agreed to do. And because of that, you cannot then turn around and say the other part of the contract, the subrogation waiver, that should act as a shield against your insurance company coming after me. Because that's not what was agreed to. Well, what you read to me, it didn't say you shall not park it. I thought it said something, you shall not prohibit or prevent the use of tenants or owners. It didn't say something like that? It does, Your Honor, but it follows immediately with this sentence, and I'll read it to the court. And I apologize, I had it here. And it was moved. Counsel, did you get it in the page number? Actually, it's right here, Your Honor. I can read it to you. It says, driveways and entrances, keep driveways, parking garages, loading areas, and entrances serving premises clear and available to the owner, owners, employees, and emergency vehicles at all times, period. Then it continues, do not use these areas for parking or storage of material except as approved by owner. So after that sentence, it does, in absolute terms, say do not use unless the owner specifically says you can park there. But again, going back to the general use of waiver of subrogation, don't you anticipate the other parties are going to do something wrong? That's the whole purpose. You'd otherwise be subrogating because they did something wrong, right? Absolutely, Your Honor, except the subrogation waiver wasn't intended to be limitless. In this particular instance, it has a limitation. In fact, the subrogation waiver could have said this. It could have said insurance not applicable to the work, but insurance applicable to the property being worked on. So in this case, I wouldn't have that argument if it had said applicable to the property versus applicable to the work, which, as I mentioned in my main part of my argument, has the how portion of it. And so without any further questions, Your Honor, appellant rests on its briefs and its argument. Thank you. Thank you so much. We'll ask the clerk to adjourn the court for the day, and then we'll come down and greet counsel.
judges: Roger L. Gregory, Robert B. King, Henry F. Floyd